AO 91 (Rev. 11/11)   Criminal Complaint

~~SEALED BY ORDER OF THE COURT~~

**FILED**
Apr 14 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| DANIEL BARILI | ) Case No. **CR 21-70620-MAG** |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 2, 2020  in the county of  Santa Cruz  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 841(a)(1) and (b)(1)(B) | Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine<br>MAXIMUM PENALTIES:<br>Imprisonment: 5 years minimum, 40 years maximum<br>Fine: $5,000,000<br>Supervised Release: minimum 4 years, maximum life<br>Special Assessment: $100; Potential Immigration Consequences |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent Erik Wolf.

☑ Continued on the attached sheet.

Approved as to form: */signature/*
Assistant U.S. Attorney

/s/
*Complainant's signature*
Erik Wolf, DEA Special Agent
*Printed name and title*

Sworn to before me via telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: April 14, 2021

*Judge's signature*

City and state: Arcata, CA

Robert M. Illman, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF DEA SPECIAL AGENT ERIK WOLF
# IN SUPPORT OF CRIMINAL COMPLAINT

I, Erik A. Wolf, being duly sworn, depose and hereby declare as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Drug Enforcement Administration (DEA) Special Agent currently assigned to the San Jose Resident Office (SJRO).  As a Special Agent with the DEA, my investigations focus on large-scale narcotic offenders.  I have been employed by the DEA since March, 2012.  Prior to being assigned to the SJRO, I received seventeen weeks of specialized training at the DEA Academy in Quantico, Virginia.  This training included several hundred hours of comprehensive, formalized instruction in, but among other things, basic narcotics investigations, drug identification, detection, interdiction, United States narcotic laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.  I also attended DEA's Clandestine Laboratory enforcement school, focusing on investigations involving clandestine labs.  I have participated in several investigations relating to drug trafficking, the arrests of well over twenty persons involved in drug trafficking, and on at least twenty occasions, I have been involved in searches of locations in connection with drug trafficking investigations.  As a result of my training and experience, I am familiar with how various drugs, including crystal methamphetamine and heroin, are used and the typical distribution and trafficking methods used by drug dealers and traffickers.  I am also familiar with the various methods generally utilized by traffickers to transport drugs in and through the state of California.

2.      I am also familiar with the manner in which narcotics traffickers use vehicles, telephones, cellular telephone technology, pagers, coded communications or slang-filled conversations, false or fictitious identities, and other means to facilitate their illegal activities and

thwart law enforcement investigations. Furthermore, through my investigations, I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3. This affidavit is made in support of a complaint charging Daniel Christian BARILI ("BARILI") with a violation of Title 21 U.S.C § 841(a)(1) and (b)(1)(B), Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine, occurring on March 2, 2020. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for arrest. The facts set forth in this affidavit are based upon my personal observations, my training and experience, information obtained from other agents and witnesses, and my review of law enforcement reports.

## STATEMENT OF PROBABLE CAUSE

4. On March 2, 2020, Santa Cruz County Sheriff's Office ("SCCSO") detectives were conducting surveillance on a Toyota Corolla bearing California registration 8KAL930 ("Corolla"), utilized by Daniel Christian BARILI in Soquel, California, in the Northern District of California. While the Corolla was parked in the Burger King parking lot at 1302 Soquel Avenue, SCCSO Sergeant Nicholas Baldrige observed BARILI move a silver and black lock box from the passenger compartment of the Corolla to the trunk. Sgt. Baldrige also observed another person (hereafter, "Individual 1") getting in and out of the passenger side front seat. While surveilling the Corolla

in the parking lot, Sgt. Baldrige observed Individual 1 open the passenger side front door and throw a Burger King cup on the ground, in violation of California Penal Code (PC) 374.4 (littering).

5. After observing the Corolla depart, Sgt. Baldrige followed in his own vehicle. At the intersection of Soquel Avenue and Morrissey Boulevard, in the immediate vicinity of the Burger King, Sgt. Baldrige observed that BARILI's seat belt was hanging loosely, a violation of California Vehicle Code (CVC) 27315(d)(1) (driving without a seat belt). Sgt. Baldrige then observed BARILI put on his seatbelt. Sgt. Baldrige then observed as BARILI made a U-turn and accelerated to approximately 36 miles per hour in a 25 mile per hour zone in violation of California VC 22350 (speeding). At that point, Sgt. Baldrige initiated a traffic stop of the Corolla.

6. Sgt. Baldrige contacted the driver, BARILI, and the passenger, Individual 1. BARILI advised that he did not have is identification on him and verbally provided his name, date of birth, and driver's license number. While getting this information, Sgt. Baldrige observed what he recognized as loose marijuana bud on top of the steering column of the Corolla. He pointed this out to BARILI, who stated that someone had just given him the marijuana. Sgt. Baldrige conducted a records check and had BARILI and Individual 1 exit the vehicle.

7. Sgt. Baldrige then utilized his narcotics detection K9 to conduct a free air sniff of the exterior of the Corolla. The K9 is certified in the detection of narcotics, including methamphetamine, heroin, cocaine, and marijuana. Sgt. Baldrige started on the driver's side of the vehicle and the K9 indicated the odor of narcotics at the seam between the driver's side front door and rear door by focusing on the seam. Based on the K9's alert and the loose marijuana observed in the vehicle, Sgt. Baldrige and Detective Chris Jones conducted a search of the vehicle.

8. During the search of the Corolla, Sgt. Baldrige located a gallon sized Ziploc bag containing a white crystalline substance, believed to be methamphetamine. The suspected methamphetamine was wrapped in a flannel in the back seat of the Corolla, and was later found to have a total gross weight of approximately 745 grams.

9. In the trunk, Sgt. Baldrige located a silver and black lock box, believed to be the same box that Sgt. Baldrige saw BARILI place into the trunk of the Corolla at the Burger King. Sgt. Baldrige asked BARILI for the code to the lock.  BARILI initially denied knowing the code, but when told that he had been seen moving the box around, BARILI told Sgt. Baldrige the lock code.  Inside the box, Sgt. Baldrige located a sandwich bag containing suspected heroin that weighed approximately 78 gross grams, a sandwich bag containing suspected methamphetamine that weighed approximately 89 gross grams, and a fentanyl testing kit.  While detectives were locating the items above, BARILI spontaneously claimed that the drugs were his and were for personal use.

10. Inside Individual 1's purse, which was found on the passenger side front floorboard, Detective Jones located a black box that contained the following items, among other things: multiple unused 3" x 3" plastic bags, a digital scale, packaged Suboxone strips, a small amount of suspected heroin, and a small amount of suspected methamphetamine[1] that was in a 3" x 3" plastic bag that matched the other unused plastic bags.  Individual 1 told Sgt. Baldrige that the black box did not belong to her, and that she took it to conceal it during the stop.

11. On BARILI's person, BARILI had a cellular telephone and a small amount of suspected heroin.  BARILI was then arrested and transported to the Santa Cruz County Jail.

12. While in intake at the Santa Cruz County Jail, BARILI consented to a forensic search of his phone and provided Detective Ryan Fulton his passcode.  During an initial review, Detective Fulton located the following text messages that Detective Fulton attributed to drug sales:

From BARILI to 831-435-8275: "Hey I have 5 pieces and it's bomb"

From BARILI to "Jenny Gra": "l need some I still didn't get any"

---

1 The suspected methamphetamine later tested presumptively positive for the presence of methamphetamine with a NIK "U" test by SCCSO Criminologist May Cheung on March 3, 2020.

From "Jenny Gra" to BARILI: "I got 5 for 6 and I'm sure it cuts if your going big and it's GREAT"

From BARILI to "Jenny Gra": "Jen. I pay 70 to 80 each get mine And it's bomb. but bring me something for now".

From "Jenny Gra" to BARILI: "Where abouts i could bring you sum if you let me move in hahaha."

From BARILI to "Jenny Gra": "I'm at work at the Ramada but there super sketchey about people"

13.     Methamphetamine is a Schedule II controlled substance.  Based on the fact that the drugs were located in BARILI's vehicle, that BARILI was driving the vehicle, that he knew the code to the silver lock box, was seen with the box, and claimed that the drugs in the vehicle belonged to him, I believe that the drugs in the vehicle belonged to BARILI.  Based on the large amount of methamphetamine, the unused packaging, and the digital scale, I believe that BARILI possessed the suspected methamphetamine inside the vehicle with the intention of distributing it to others.  Furthermore, based on the text messages located on BARILI's phone, I believe that BARILI is actively engaged in drug distribution.

## CONCLUSION

14.     Based on the foregoing, there is probable cause to believe that on March 2, 2020, BARILI possessed with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of Title 21 U.S.C § 841(a)(1) and (b)(1)(B).

15.     I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

                                                \_\_\_\_/s/\_\_\_\_
                                                Erik Wolf
                                                Drug Enforcement Administration

Sworn and subscribed to before me over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) and signed by me on this \_\_\_\_14th\_\_\_ day of April 2021.

_____
HON. ROBERT M. ILLMAN
United States Magistrate Judge

6

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

## OFFENSE CHARGED

COUNT ONE: (21 U.S.C. § 841(a)(1) and (b)(1)(B)) - Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:**
Imprisonment: minimum 5 years, maximum 40 years
Fine: $5,000,000
Supervised Release: minimum 4 years, maximum life
Special Assessment: $100
Potential Immigration Consequences

**DEFENDANT - U.S**
▶ DANIEL BARILI

**DISTRICT COURT NUMBER**

CR 21-70620-MAG

**FILED**
Apr 14 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
DEA S/A Erik Wolf

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: Stephanie M. Hinds
[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): AUSA Maia Perez

## DEFENDANT

**IS *NOT* IN CUSTODY**
1) [X] Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶ _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction  [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No
If "Yes" give date filed: _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT   Bail Amount: None

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance
Defendant Address:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments: